The next matter on our calendar is von Weingarten v. Chester. Are the parties here? Yes. Can you hear me? Yes, we can. And you are? I'm attorney Duncan Kilmartin, appellee, and I see that I'm now on the screen. Where is Harold Stevens? I'm on. Can you hear me? Yes. I'm trying to get on the video. It's not letting me in. Lower left hand corner, Harold. I'm getting it. Zoom before. Let's see. Hold on a second. Mr. Stevens. I just sent you a request to start your video. So if you get a request, maybe I'll let you do it that way. All right. There you are. Okay. The floor is yours, Mr. Stevens. Thank you, your honors. If it may proceed the court. I will proceed. I represent Albert von Weingarten. Whose mother died in 2001. And this case has been going on pretty much. Ever since. Just anything left of the estate, Mr. Stevens. The only thing that we know of is Albert's agreement to pay $50,000. As part of a settlement plus 12% interest, which today is around $90,000. And that was a settlement. That was a settlement in a suit. For wasting the assets. Basically attorney kill Martin. I brought an action on behalf of Lonnie Chester. The as administrator of. Philomena's estate. His grandmother. And I saw it basically claim that the Von Weingarten's over a two-year period. Stole over $325,000 from her. They were taking care of it for two years. The only money she had was from the sale of her house, which was a hundred. $13,000, which she put into a joint account with them. So on the top date of her death, she had no money. But yeah. What about anything in the house? The house was sold. That's where we, the 113,000 came from. What about the contents? That was all part of the sale too. So. Basically. She was moved from Michigan to. To Vermont and Massachusetts where the bond. Gardens. Had their. Houses. So your, your, your clients agree to pay $50,000 as part of the settlement of, of, of, of that case, right? Right. Yes. How, how is it that they prevailed in that case? If they agreed to pay $50,000. They prevailed in that they had. The claims that Lonnie Chester was making on behalf. Of himself individually. And on behalf of. The siblings of Albert Von Weingarten. They're like five of them. He brought an intentional infliction of this. Emotional distress. They prevailed on some of the claims. Well, yeah, that was a full claim against, you know, that, that, and. But they still agreed to pay $50,000. Correct. Well, he, he was not, he was not convicted. But they reserved the right. He reserved the right as beneficiary to the estate as his interest in the estate. So what works. What I claim mainly is, is that. This lawsuit. Brought by Lonnie. Was a waste of time and resources of the estate, whether you consider it malicious prosecution or not. It's we, we say that it was negligent. It was negligent. It was a waste of time. And as a tort for which the. Administrator can be sued for individually based on Vermont statute. And the statute. Simply provides that. An executor or administrator is individually liable for his torts. And that an action can be brought in a court of competent jurisdiction. And that means any other court besides probate court of general jurisdiction, such as the United States district court of Vermont or the superior court, civil division of the superior court. In Vermont, it doesn't affect the administration of the estate. So basically. We're claiming that. Judge rice. Error. One is finding that there wasn't this right of action because it's statutory. And two that. If you can't make a case for maladministration, you. I mean, a case for malicious prosecution. That there's no case for. Maladministration. So. Well, Mr. Stephen, she. I don't know where she got that from. I don't know where she got that from. Judge rice identified. Indicated her analysis gave us her analysis in her. In her decision that Vermont Supreme court. Would not recognize a claim for maladministration. Am I misreading that? Yes. And I don't know where she'd get what authority she has that on, because the. The statute gives you the right. To make a case for. Maladministration. And specifically set out in the statute. And she said it because. It's not recognizing the restatement of torts. Well, if you look at the restatement of torts. As far as trusts go, it's a recognized action. And it's also, I cited the South Dakota case. Where you have the same. You have the same. You have the same. Sort of statute, which was she. The district court, I think held that you do have a right, but you got to do it within the context of the probate proceedings. And that's not what the statute says. The statute says that a court of competent jurisdiction. But then what is, what is competent on the state? Is the probate court. Well, probably court. It could be a court of which you could take it to, but it's not necessary. It's a separate claim outside of the administration of the estate. It's a, it's an action in tort. And it doesn't affect anything to do with the administration of the estate.    Thank you. Thank you. We'll continue with your argument. If we don't agree with you that you had a favorable termination. Where do you go from there? Where I go from there is, is that basically. Does that. Lonnie Chester's. 15 Count complaint. I believe it's. Nine of which counts were dismissed on summary judgment. What. Whether it's malnourished. Malicious prosecution or maladministration. I believe it's. Was negligent on his part. And that just because there was a settlement. Where. My client reserved his rights as a beneficiary. And that's what I'm saying. That's what I'm saying. One of those rights is to sue the. Administrator for maladministration. The question is whether that lawsuit was negligent or not, as opposed to malicious prosecution. That was with someone else bring that type of action when there is no evidence that there were any assets available. Or that there was any evidence that my clients took anything wrong fully. That's my opening. Thank you. All right. You have reserved two minutes for rebuttal. We'll hear from opposing council and come back to you. Counsel. Mr. Joe Martin. Turn on your microphone. I can't hear you. I can't hear you. Your mic is off. Mr. Kilmer. I sent you a request on mute. There. Okay. I think we can hear you now. No, that was Troy. Okay. Mr. Kilmer. And remember earlier when we was having this issue, actually to check your sentence on your microphone. Like that and make sure you're using the same microphone. And when you came in, we heard you fine. So you have to check headphones as well.  We can't. He's coming in. Okay. We can hear you now. Pardon me. Now we can hear you now. Okay. Thank you. All right. If you please the court. My name is Duncan kill Martin. I'm 78 years old. I started the practice of law in Vermont as a law clerk to the chief judge. Gibson. In November of 1967. I've been an attorney for the administrator. Chester and Philomene is a state since 2004, over 16 years ago. Appellants have had at least four different attorneys over 15 of those 16 years. I'd like to fully retire and within the law and your jurisdiction. I see your assistance in achieving that goal. By not only affirming judge Rice's summary judgment decision. But by adding grounds for that decision on two of the three claims of the appellants. First I want to summarize. Council. Is this your only active case? I have taken on some other small matters. Okay. Terminate. But, but, but I would like to, as I said, I'd like to fully retire, but first I want to summarize the three complaints made by the plain appellants plaintiffs in the district court below. In reality. They attempt to turn Lonnie Chester's. Diligent devotion to and fulfillment of his fiduciary duties. And best administration practices as administrator. In this estate of his grandmother. And the five classes of other beneficiaries exclusive of Albert Weingarten. Under the guidance of council. And to a cardinal sin of civil wrongdoing. That would reward Albert and Mary Weingarten. With a quarter of a million dollars in damages. In short, they want to turn exemplary conduct. Into actionable, bad conduct. Virtue into evil. 17 years of appellants motions and appeals. In various proceedings in the courts of Vermont. Every one of which they've lost. Capstone by this action in the federal court demonstrate this. To any reasonable mind. I would like to address a comment that was made by justice pooler or judge pooler. This is not a case of waste. Start with the September 1st, 2005 probate decision in which Albert Weingarten and Mary Weingarten testified and presented evidence. That court found. That Albert. Weingarten. Had taken between 150,000. And 180 and 250,000. Of their mother's assets and we're holding them illegally. And ordered Albert Weingarten. Who was a party to the proceeding. To turn those assets over to the administrator. That was in the probate court, Mr. Kilmartin. That was in the probate court. Yes. Orleans County. Orleans County. There is three. Yes. And it's reprinted. And it was not put in the appellants. Appendix. But we have cited it to the court below. And. That decision was issued on September 1st, 2005. And because of a two-year statute of limitations that was going to run in November. We can then sued in October. To fulfill the fiduciary duties. Of the administrator. To the estate. The court has said. These assets belong to the estate. That was the basis of the underlying action. So. There are three decisions. There are three decisions. The demonstrate that the claims of the plaintiffs are baseless. First, the probate court decision. Second, the summary judgment decision of judge bent in October of 2011. After. Abundant discovery. At least five days of videotape depositions. And all the discovery that Lonnie Chester had obtained before. The July hearings in 2005. From bank records in Massachusetts. And Vermont. As well as in Michigan. So we get to judge Ben's decision, which is conclusive as to probable cause. Because you only need. One claim. In the lawsuit. To demonstrate probable cause, which forecloses. Any. Any claim of lack of probable cause. In addition, you have the approval order of November, 2005. Of a superior court judge, not the probate judge. Which recites findings of fact. And demonstrates. The lack of abusive process. Because what the plaintiffs are complaining about are the appellants. He shouldn't have brought the lawsuit and he shouldn't have brought the. Rid of attachment. So. What you have. Are three decisions. That totally preclude abusive process and malicious prosecution. Now. What we're asking this court to do. Is on the claim of malicious prosecution. Add the additional ground to that. The two grounds cited by judge. Right. One. Unfavorable termination and two. It hasn't terminated yet. And in fact, it hasn't, it's still open. However. It's very clear. The probable cause was conclusive. Then. I want to go to the issue of maladministration. We agree with judge rice. Everything she said was true. And when you look. At what the plaintiffs have done. They have said, okay, we're going to lose on mallet. Malicious prosecution. We're going to lose on abuse of process. But. Merely bringing. The action. Merely obtaining the rid of attachment. Was a cardinal civil wrong. Cardinal sin of civil wrongdoing. Well, that's absurd. That's just totally absurd. And this. The court would not recognize maladministration as an independent court. In view of the Faust decision. What's the, the, the, the court, the Vermont spring court only recognizes two forms of action based on an underlying action. Malicious prosecution and abuse of process. And they strictly warn against. Any mis any creation of a new label that would create an unfettered right of action. On an underlying action. What do you say to Mr. Stevens's argument? Mr. Stevens's argument. Mr. Kilmartin that it's a statutory cause of action that the Supreme court of Vermont. With all due respect, can't undo what the legislature has. If you look at. Okay. Your honor. If you look at the statute. That he cites. It doesn't speak of any civil action. Yes. He has a right to bring malicious prosecution. Yes. He has a right to bring abuse of process. If he has grounds for it under rule 11. But in that statute, your honor. There's no mention of maladministration. He's grafted into that statute. And if you look at. A novel tort rubric, which we all recognize as being novel. Maladministration. You won't find that in the statute. In addition, there's no reported case. Referencing that particular statute. And if you really closely examine it. Independent of the major point. It doesn't say when and where. As a court. Or as judge Pooler recently pointed out. Where, what. What's the competent court of jurisdiction. But the real point here is your honor. Maladministration under, under, I believe the case is called Faust. Is that a recognizable tort? So go back to the statute. You're personally liable for the torts, but if the tort doesn't exist. Then there's nothing there. Finally, and I think this is the most important point. Set it all aside and assume jurisdiction. And there is a cause of action as they've defined it. Under 56 C. They have not in any manner. Provided proof. Of that. They haven't shown anything under 56 C. Because it would constitute. Bad administration. They define it as merely filing the suit. Well, if merely filing the suit is consistent with your fiduciary duty. You can't create that. Into a civil law. Thank you. Thank you counsel. Mr. Stevens, you reserved two minutes for rebuttal. Yes. Thank you. So quickly going back to. Justice Fuller's question about which court it should be brought in. The statute against specifically says that the proceeding for this purpose. Could be in this court, IE, the probate court. Or proceeding in a court of competent jurisdiction. So the statute itself. Doesn't limit it to the probate court. Secondly. There is a claim for malicious prosecution, just based on the fact. That Chester on individually. And on behalf of his, of the five siblings. Brought this intentional infliction of emotional distress claim. Which was dismissed. What was left was his claims as administrator, which. Got settled, but all I'm saying is one part of the case. Which was a different part. Was. An intentional infliction of a distress claim, which got thrown out. So there was, there was a conclusion. And then Nina, my client. Let me, let me ask you this with respect to the male administration claim. The factual basis for that is, is, is the bringing of the lawsuit or is there more alleged? No. The primary thing is the brain of the lawsuit that it was. First of all, it was based on. Duncan kill Martin's affidavit as to how much was owed. I mean, that was the evidence. But in any event, I mean, clearly. It's a separate action. We should at least be able to develop our, that theory. Further in the court. And I quite. Have you alleged anything other than the bringing of the lawsuit as the. The factual basis for the maladministration claim. That's primarily it. Okay. Primarily Mr. Stevens. Is there anything else? That's that's primarily it. I mean, no, no, no. I think it went on in this estate. Is there something besides primarily when you say primarily there it's often a secondarily. Thank you. All right. We got it. Thank you. Your eyes. Thank you both. Thank you, your honors. This has been a pleasure. Thank you. The pleasure was ours.